# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JAMES I.,[1]<br><br>     Plaintiff,<br>v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Soc. Sec. Admin.,<br><br>     Defendant. | Case No. 4:20-cv-00036-SLG |

## DECISION AND ORDER

On or about June 18, 2019, James I. ("Plaintiff") protectively filed an application for disability insurance benefits under Title II of the Social Security Act.[2] In his application, Plaintiff alleged disability beginning May 26, 2019.[3] Plaintiff has exhausted his administrative remedies and filed a Complaint seeking relief from this Court.[4] Plaintiff's opening brief asks the Court to remand the agency's decision

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), *available at* www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time.

[3] Administrative Record ("A.R.") 145.

[4] *See* Docket 1 (Compl.).

for further administrative proceedings.[5] The Commissioner filed an Answer and a brief in opposition to Plaintiff's motion.[6] Plaintiff filed a reply brief.[7] Oral argument was not requested and was not necessary to the Court's decision. This Court has jurisdiction to hear an appeal from a final decision of the Commissioner of Social Security.[8] For the reasons set forth below, Plaintiff's request for relief is GRANTED.

## I. STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it is either not supported by substantial evidence or is based upon legal error.[9] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10] Such evidence must be "more than a mere scintilla," but may be "less than a preponderance."[11] In reviewing the agency's

---

[5] Docket 22 at 1, 20 (Mot.).

[6] Docket 16 (Answer); Docket 23 (Opp.).

[7] Docket 25 (Reply).

[8] 42 U.S.C. § 405(g).

[9] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[10] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[11] *Perales*, 402 U.S. at 401; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)

Case No. 4:20-cv-00036-SLG, *James I. v. Kijakazi*
Decision and Order
Page 2 of 17

determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the administrative law judge ("ALJ")'s conclusion.[12] If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[13] A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which [he] did not rely."[14] An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[15]

## II. DETERMINING DISABILITY

The Social Security Act ("the Act") provides for the payment of disability insurance benefits to individuals who have contributed to the Social Security

---

(per curiam).

[12] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[13] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

[14] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

[15] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

Case No. 4:20-cv-00036-SLG, *James I. v. Kijakazi*
Decision and Order
Page 3 of 17

program and who suffer from a physical or mental disability.[16] Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[17]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[18]

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[19] A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[20] If a

---

[16] 42 U.S.C. § 423(a).

[17] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[18] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

[19] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[20] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d

claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[21] The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[22] The steps, and the ALJ's findings in this case, are as follows:

**Step 1.** Determine whether the claimant is involved in "substantial gainful activity."[23] *The ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 26, 2019, the alleged disability onset date.*[24]

**Step 2.** Determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work experience. The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.[25] *The ALJ determined that Plaintiff had the following medically*

---

1094, 1098 (9th Cir. 1999).

[21] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098 (emphasis in original).

[22] *Tackett*, 180 F.3d at 1101.

[23] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[24] A.R. 20.

[25] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

Case No. 4:20-cv-00036-SLG, *James I. v. Kijakazi*
Decision and Order
Page 5 of 17

*determinable severe impairments: depression; anxiety; post-traumatic stress disorder (PTSD).[26] The ALJ also determined that Plaintiff's obesity was a non-severe impairment.[27]*

**Step 3.** Determine whether the impairment or combination of impairments meet(s) or equal(s) the severity of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1, precluding substantial gainful activity. If the impairment(s) is(are) the equivalent of any of the listed impairments, and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step.[28] *The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.*[29]

Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed. Once determined, the RFC is used at both step four and step five. An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from his impairments, including impairments

---

[26] A.R. 20.

[27] A.R. 20.

[28] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[29] A.R. 20–21.

that are not severe.³⁰ *The ALJ determined that Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: no interaction with the general public; occasional (at best) interaction with co-workers and supervisors; few workplace changes and Plaintiff would be off task and not productive averaging approximately 10 percent of the workday.*³¹

**Step 4.** Determine whether the claimant is capable of performing past relevant work. At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC. If the claimant can still do his past relevant work, the claimant is deemed not to be disabled.³² Otherwise, the evaluation process moves to the fifth and final step. *The ALJ determined that Plaintiff was capable of performing past relevant work as a security guard, both as had actually been performed by him and as generally performed in the national economy.*³³

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of his age, education, and work experience, and in light

---

³⁰ 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

³¹ A.R. 23.

³² 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

³³ A.R. 26.

Case No. 4:20-cv-00036-SLG, *James I. v. Kijakazi*
Decision and Order
Page 7 of 17

of the RFC. If so, the claimant is not disabled. If not, the claimant is considered disabled.[34] *The ALJ did not reach this determination because the ALJ determined that Plaintiff was capable of performing past relevant work.*

The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from May 26, 2019, through the date of the ALJ's decision.[35]

### III. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was born in 1967 and was 51 years old on the alleged disability onset date.[36] Plaintiff reported various past relevant work activities, including working as a security guard.[37] In December 2019, the Social Security Administration ("SSA") determined that Plaintiff was not disabled under the applicable rules.[38] Plaintiff requested a hearing before an Administrative Law Judge. A telephonic hearing held on June 10, 2020, in Seattle, Washington, before

---

[34] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[35] A.R. 27.

[36] A.R. 67.

[37] A.R. 26.

[38] A.R. 67–80.

ALJ Timothy Mangrum.[39] On July 1, 2020, the ALJ issued an unfavorable ruling.[40] On October 6, 2020, the Appeals Council denied Plaintiff's request for review.[41] On October 30, 2020, Plaintiff appealed the Commissioner's final decision to this Court; he is represented by counsel in this appeal.[42]

## IV. DISCUSSION

Plaintiff asserts that the ALJ erred by: (1) failing to acknowledge or discuss Plaintiff's work history when evaluating Plaintiff's symptom testimony; (2) failing to fully account for Plaintiff's mental impairments in the RFC; and (3) relying on vocational expert testimony that is inconsistent with the Dictionary of Occupational Titles ("DOT").[43]

### A. The ALJ did not err by not addressing Plaintiff's work history when evaluating Plaintiff's symptom testimony.

At Step 3, the ALJ found that Plaintiff's symptom testimony "concerning the intensity, persistence and limiting effects of these symptoms [was] not entirely

---

[39] A.R. 18.

[40] A.R. 18–27.

[41] A.R. 1–6.

[42] Docket 1 (Compl.).

[43] Docket 22 at 1 (Mot.).

consistent with the medical evidence and other evidence in the record."[44] The ALJ did not expressly discuss Plaintiff's work history in making this credibility determination. Plaintiff asserts that the ALJ legally erred in this regard because agency regulations—specifically, 20 C.F.R. § 404.1529(c)(3) and Social Security Rulings ("SSR") 96-8p and 16-3p—require the ALJ to consider Plaintiff's "stellar" work history as part of the credibility assessment of symptom testimony.[45]

SSR 96-8p provides that an ALJ must consider "[e]vidence from attempts to work" as part of an RFC assessment. SSR 16-3p references 20 C.F.R. § 404.1529(c)(3), which provides that "all of the evidence presented" will be considered when evaluating a claimant's symptoms, "including information about your prior work record, your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees and other persons."[46]

Although these regulations require the ALJ to consider a broad spectrum of evidence, including a claimant's prior work record, most district courts have held that an ALJ is not required to specifically discuss a claimant's work history when

---

[44] A.R. 26.

[45] Docket 22 at 17–19 (Mot.).

[46] *See also Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002) (the ALJ "may consider at least the following factors when weighting the claimant's credibility," of which "work record" was one of six factors).

Case No. 4:20-cv-00036-SLG, *James I. v. Kijakazi*
Decision and Order
Page 10 of 17

determining credibility.⁴⁷ While work history may be relevant to an assessment of symptom testimony, Plaintiff does not cite to—nor is the Court aware of—any controlling Ninth Circuit authority indicating that an ALJ's failure to explicitly discuss the claimant's work history when determining credibility constitutes legal error requiring remand.⁴⁸ Accordingly, the ALJ did not err by not acknowledging Plaintiff's work history as part of his credibility determination.

### B. Substantial evidence supports the ALJ's RFC assessment.

Plaintiff raises two principal arguments regarding the ALJ's RFC finding. First, after summarizing his medical records, Plaintiff asserts that the ALJ did not fully account for his mental impairments in the RFC.⁴⁹ However, while the Court is required to examine the record as a whole, it may neither reweigh the evidence nor

---

⁴⁷ *See Greer v. Comm'r of Soc. Sec.*, Case No. SA CV 17-01316-DFM, 2018 WL 5885942, at *7 (C.D. Cal. Nov. 7, 2018) ("An ALJ is not required to discuss the claimant's work history in determining credibility."); *Dugger v. Berryhill*, Case No. 4:16-CV-00552-CWD, 2018 WL 1413367, at *5 (D. Idaho Mar. 21, 2018) ("the Court has not located binding Ninth Circuit authority indicating that the failure to consider work history, as a stand-alone proposition, constitutes error requiring remand"); *Ferguson v. Berryhill*, Case No. EDCV 16-02186-JDE, 2017 WL 2927148, at *5 (C.D. Cal. July 7, 2017) ("Plaintiff has not shown that the ALJ's failure to engage in a more elaborate discussion of her work history was error."); *Rocha v. Comm'r of Soc. Sec.*, Case No. 1:15-CV-01298-SAB, 2016 WL 7034739, at *16 (E.D. Cal. Dec. 1, 2016) ("However, while work history is a factor that the ALJ considers in determining credibility, Plaintiff does not cite to, nor is the Court aware of any requirement that an ALJ must discuss the work history in the credibility section of the ALJ's decision.").

⁴⁸ The only Ninth Circuit authority cited by Plaintiff, *Lingenfelter v. Astrue,* 504 F.3d 1028, 1038–39 (9th Cir. 2007), is inapposite. There, the Ninth Circuit held that the fact a claimant worked for a brief period of time "alone is not a clear and convincing reason for rejecting [a claimant's] subjective pain and symptom testimony." *Id.* at 1038.

⁴⁹ Docket 22 at 9–15 (Mot.).

substitute its judgment for that of the Commissioner.[50] Plaintiff neither establishes that the evidence undermines the ALJ's RFC determination nor identifies any irrational assessment by the ALJ. Accordingly, whereas here, when the evidence may be susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.[51]

Second, Plaintiff asserts that the ALJ erred by not requesting a consultative examination, taking medical expert testimony, or recontacting a treating doctor; Plaintiff asserts that the ALJ instead improperly relied on his own lay opinion based on a selective reading of the record.[52] But "an ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."[53] Plaintiff does not specifically allege what evidence is ambiguous or lacking in the record. Additionally, the decision does not indicate that the ALJ improperly formed his own lay medical opinion. Rather, the ALJ simply "translat[ed] and incorporat[ed] clinical

---

[50] *Thomas*, 278 F.3d at 954.

[51] *Thomas*, 278 F.3d at 954.

[52] Docket 22 at 15–17 (Mot.).

[53] *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001) (citing *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001)).

Case No. 4:20-cv-00036-SLG, *James I. v. Kijakazi*
Decision and Order
Page 12 of 17

findings into a succinct RFC."[54] Further, the ALJ's decision does not indicate a selective focus on parts of the record that suggest non-disability. Rather, the ALJ summarized medical records from numerous visits spanning multiple years.[55]

For the foregoing reasons, the Court finds that substantial evidence supports the ALJ's RFC assessment.

### C. The ALJ's findings at Step 4 are not supported by substantial evidence.

Before reaching Step 4, the ALJ determined that Plaintiff's RFC limited him to "no interaction with the general public."[56] Using that RFC, the ALJ determined at Step 4 that Plaintiff could return to his past relevant work as a security guard, both as he had actually performed that job and as generally performed in the national economy.[57] Plaintiff asserts that the ALJ's Step 4 determination is not supported by substantial evidence.[58]

---

[54] *Rounds v. Comm'r Social Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

[55] A.R. 20–22; *accord* A.R. 23 ("In making this finding, the undersigned has considered all symptoms . . . .").

[56] A.R. 23.

[57] A.R. 23, 26.

[58] Docket 22 at 3–8 (Mot.); *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002) ("A claimant must be able to perform her past relevant work either as actually performed or as generally performed in the national economy.").

As to the past work actually performed by Plaintiff, the Commissioner now concedes—and the Court agrees—that the ALJ's finding that Plaintiff could perform his past relevant security guard work as actually performed was not supported by substantial evidence.[59]

As to whether Plaintiff could work as a security guard as that job is generally performed in the national economy, the ALJ stated the "vocational expert testified that a person of [Plaintiff's] age, education, past work experience, and the ability to perform within the confines of the residual functional capacity cited in finding number [sic] would be able to perform his past relevant work activity as a security guard as performed in the national economy."[60] Relying on the VE's testimony, the ALJ concluded that Plaintiff "is capable of performing past relevant work as a security guard" because "[t]his work does not require the performance of work-related activities precluded by" Plaintiff's RFC, including the preclusion of public interaction.[61]

---

[59] Docket 23 at 3, n.1 (Opp.). On remand, in assessing Plaintiff's past relevant security guard work as actually performed, the ALJ should inquire about Plaintiff's past job responsibilities as a security guard at the Columbia Tower in Seattle, Washington. A.R. 205.

[60] A.R. 26 (citing 372.667-034 Guard, Security, DICOT 372.667-034, available at 1991 WL 673100); *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017) ("In determining whether an applicant is entitled to disability benefits, an ALJ may consult a series of sources, including a VE and the DOT.").

[61] A.R. 26.

Plaintiff asserts that the RFC's limitation of no public interaction is inconsistent with both the VE's testimony and the DOT's job description of a security guard. Plaintiff maintains that the VE testified that a security guard position requires limited public interaction and the DOT job description requires some public interaction as well.[62] Plaintiff contends the ALJ had a duty to address these purported inconsistencies with the RFC.[63] The Commissioner responds that the "ALJ had no duty to ask the VE about any apparent conflicts with the DOT and the RFC limiting Plaintiff to no interaction with the general public" because the "DOT description for security guard does not indicate that an individual would be required to interact with the public; rather, it lists a number of possible duties that a security guard may have to perform."[64]

The Court disagrees that the DOT only lists possible duties that a security *may* have to perform. The DOT's description of a security guard plainly requires at least some public interaction. It clearly states that a security guard performs each of the following tasks: "[w]arns violators of rule infractions"; "apprehends or expels miscreants"; "[o]bserves departing personnel to guard against theft of

---

[62] Docket 22 at 4–5 (Mot.).

[63] Docket 22 at 7–8 (Mot.).

[64] Docket 23 at 4 (Opp.).

Case No. 4:20-cv-00036-SLG, *James I. v. Kijakazi*
Decision and Order
Page 15 of 17

company property"; and "[p]ermits authorized persons to enter property."[65] Each of these tasks requires public interaction. Thus, the DOT description does not support the ALJ's Step 4 determination, as that position description is at odds with the RFC's requirement of no public interaction.

The Court also finds the ALJ's reliance on the VE's testimony is not supported by substantial evidence. In response to the ALJ's questions, the VE testified that a security guard position would entail "very limited interaction" with the public.[66] Thus, the VE's testimony is inconsistent with the RFC's limitation of no public interaction.

As both the DOT and VE testimony require some degree of public interaction to perform as a security guard, but the ALJ's RFC precluded any public interaction, the Court finds that the ALJ's Step 4 determination that Plaintiff was capable of performing past relevant security guard work as generally performed in the national economy is not supported by substantial evidence. Accordingly, the Court will remand for the ALJ to address whether Plaintiff can perform his past relevant security guard work as was actually performed by him and generally performed in

---

[65] 372.667-034 Guard, Security, DICOT 372.667-034, available at 1991 WL 673100.

[66] A.R. 61–62.

the national economy, and conduct further proceedings as may be necessary that are consistent with this Decision and Order.[67]

## V. ORDER

In light of the foregoing, IT IS ORDERED that Plaintiff's request for relief at Docket 22 is GRANTED. IT IS FURTHER ORDERED that this matter is REMANDED for further proceedings consistent with this Decision and Order.

The Clerk of the Court shall enter a final judgment accordingly.

DATED this 21st day of December, 2021, at Anchorage, Alaska.

                                                */s/ Sharon L. Gleason*
                                                UNITED STATES DISTRICT JUDGE

---

[67] Both *Lamear v. Berryhill*, 865 F.3d 1201, 1205–07 (9th Cir. 2017), and *Gutierrez v. Colvin*, 844 F.3d 804, 807–09 (9th Cir. 2016), address whether an ALJ is required to address seeming conflicts between a VE's testimony and the DOT. Here, the Court finds there is some divergence between the VE's testimony and the DOT as to the degree of public interaction. More importantly, the RFC conflicts with both the VE's testimony and the DOT. On remand, the ALJ should "ask the VE to explain in some detail why there is no conflict between the DOT and the applicant's RFC" as well address any conflict between the VE's testimony and the DOT description. *Lamear,* 865 F.3d at 1205.

Plaintiff also asserts that the VE's testimony conflicts with other, reliable vocational information, specifically the Department of Labor's Occupational Requirements System ("ORS") and O*NET. Docket 22 at 6–8 (Mot.). However, SSR 00-4p only imposes an affirmative duty on an ALJ to resolve apparent conflicts with the DOT, not other sources of jobs information, and Plaintiff cites no authority that a VE's testimony be reconciled with ORS or O*NET.